46 F.3d 1128
 75 A.F.T.R.2d 95-717, 95-1 USTC P 50,091
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cecil W. KING, Sr.; Virginia V. King; Louis C. King;
Teresa J. King; Scott D. King; Cecil W. King,
Jr; Catherine V. King, Defendants-Appellants.
 No. 94-1199.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Aug. 23, 1994.
Decided: Jan. 30, 1995.
 
 D. French Slaughter, III, MCGUIRE, WOODS, BATTLE & BOOTHE, Charlottesville, VA, for Appellants. Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Jonathan S. Cohen, Paula K. Speck, Helen F. Fahey, United States Attorney, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, DC, for Appellee.
 Before HAMILTON and LUTTIG, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 We are asked to decide whether the district court correctly found that Appellants were ineligible for a fuel tax credit under 26 U.S.C.A. Sec. 29 (West Supp.1994) because they did not sell qualified fuel to an unrelated person. Finding no error, we affirm.
 
 I.
 
 2
 Pinedell Associates, Inc. (Pinedell) was a Subchapter S corporation whose sole shareholders were Cecil W. King, Sr., Louis C. King, Scott D. King, and Cecil W. King, Jr. Pinedell operated a plant which received raw ethanol from third parties, upgraded the ethanol so that it could be added to gasoline, and returned the processed ethanol to the third parties, who then used it to produce ethanol-enhanced gasoline.
 
 
 3
 The Internal Revenue Code allows a tax credit for the production and sale to unrelated persons of qualified fuels, 26 U.S.C. Sec. 29(a), which include "gas produced from ... biomass." 26 U.S.C. Sec. 29(c)(1)(B)(ii). To upgrade raw ethanol, Pinedell used technology that converted sawdust into a hot, high carbon-content gas. The gas burned as fuel, and the heat from the combustion was transferred to a boiler to produce steam, which powered the processing function.
 
 
 4
 Pinedell filed amended federal income tax returns for tax years 1987, 1988, and 1989, claiming a tax credit under Sec. 29(a). Taxpayers, the shareholders of Pinedell and three of their wives, filed amended individual federal income tax returns for the years 1987, 1988, and 1989, claiming their proportional share of the credits claimed by Pinedell. Pinedell and Taxpayers claimed entitlement to the refunds because of the use of sawdust in the processing operation.
 
 
 5
 The Internal Revenue Service issued refunds to taxpayers for each year. On July 2, 1993, the instant action for recovery of erroneous refunds was initiated. The United States moved for summary judgment on the basis that the fuel was not "sold" to unrelated third persons. Following a hearing on the motion, the district court issued an opinion finding that there had been no sale as contemplated by Sec. 29(a). The court granted summary judgment to the United States. This appeal followed.
 
 II.
 
 6
 Taxpayers argue that because nonconventional fuel (gas produced from sawdust) was used to upgrade raw ethanol, a portion of the fees paid to Pinedell by third persons was allocable to Pindedell's cost of that fuel. Therefore, Taxpayers argue, a sale of that nonconventional fuel to third persons occurred.
 
 
 7
 Section 29(a) of the Internal Revenue Code provides:
 
 
 8
 Allowance of credit.--There shall be allowed as a credit against the tax imposed by this chapter for the taxable year an amount equal to--
 
 
 9
 (1) $3, multiplied by
 
 
 10
 (2) the barrel-of-oil equivalent of qualified fuels--
 
 
 11
 (A) sold by the taxpayer to an unrelated person during the taxable year, and
 
 
 12
 (B) the production of which is attributable to the taxpayer.
 
 
 13
 Our analysis focuses on the meaning of the word "sold." We are convinced that, Taxpayers' arguments notwithstanding, the fuel was not sold within the meaning of Sec. 29(a).
 
 
 14
 A court's task in interpreting a statute "is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, 'that language must ordinarily be regarded as conclusive.' " Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570 (1982) (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)). A statute's words are to be given their ordinary meaning unless there is a convincing reason to treat them otherwise. Caminetti v. United States, 242 U.S. 470, 485-86 (1917); see also United States v. American Trucking Ass'ns, 310 U.S. 534, 543 (1940).
 
 
 15
 A "sale" is the "transfer of property for consideration either in money or its equivalent." Black's Law Dictionary 1337 (6th ed.1990). Pinedell did not transfer to its buyers fuel that was consumed during the processing of raw ethanol. Rather, it was upgraded ethanol that Pinedell sold to unrelated persons.
 
 
 16
 After a de novo review of the materials before us, see Medical Waste Assocs. v. Mayor and City Council of Baltimore, 966 F.2d 148, 150 (4th Cir.1992), we are unconvinced that there is a reason to give the word "sold" in Sec. 29(a) anything other than its ordinary meaning. Accordingly, we conclude that the district court properly awarded summary judgment to the United States.
 
 III.
 
 17
 We accordingly affirm the judgment of the district court. As our review of the materials before us reveals that it would not aid the decisional process, we dispense with oral argument and grant the motion to submit the case on briefs.
 
 
 18
 AFFIRMED.